IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT K. NOELL,

      Plaintiff,                                  No. 2:09-cv-03233 KJN

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                             <u>ORDER</u>

                                    /

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's fourth application for Supplemental Security Income under Title XVI of the Social Security Act ("Act").[1] (Dkt. No. 18.) In plaintiff's motion for summary judgment, plaintiff contends that the Administrative Law Judge ("ALJ") erred by: (1) rejecting or discounting the medical opinions and assessments of plaintiff's treating physicians, Michael Hess, M.D., and Guy Corkill, M.D., without providing legally adequate reasons for doing so; (2) discounting plaintiff's testimony regarding the disabling nature of his impairments without providing clear and convincing reasons for doing so; (3) questioning the

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 6, 13.)

1

vocational expert with incomplete hypothetical questions and then relying on the vocational expert's responses.  The Commissioner filed an opposition to plaintiff's motion, which the court construes as including a cross-motion for summary judgment.[2]  (Dkt. No. 21.)  For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND[3]

Plaintiff was 46 years old at the time of the ALJ's decision denying plaintiff's applications for benefits, and he has at least a high school education or GED level education. (See Administrative Transcript ("AT") 676, 1035-36.)  In terms of previous employment, plaintiff worked as a courtesy clerk at a market, a shuttle van driver, and a telephone solicitor for a travel company.  (AT 676, 1037-39.)  Generally, plaintiff's ailments relate to claimed degenerative problems in his lumbar spine.

   A.   Procedural Background

On October 17, 2005, plaintiff applied for Supplemental Security Income ("SSI"), alleging a disability onset date of February 28, 1997.[4]  (AT 720.)  At a hearing conducted by the ALJ, plaintiff's counsel amended plaintiff's onset date to October 17, 2005.  (AT 670, 1033-34.) The Social Security Administration denied plaintiff's application initially and upon

---

[2] The Commissioner's brief is entitled "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT," and does not expressly move for summary judgment on plaintiff's claims.  (See generally Dkt. No. 21.)  Notwithstanding the absence of any express cross-motion for summary judgment by the Commissioner, the undersigned construes the Commissioner's brief as including such a cross-motion in light of the fact that the Commissioner's brief requests that the ALJ's decision be affirmed.

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant the issues presented by the parties' respective motions.

[4] In his decision, the ALJ noted that the present application for SSI is plaintiff's fourth such application.  (AT 670.)  Plaintiff's prior applications for SSI were denied, and the denial of benefits in regards to plaintiff's third application was affirmed by this court in case number 2:06-cv-00683 CMK.  (See AT 670; Pl.'s Mot. for Summ. J. at 2.)

reconsideration.  (AT 686-87, 690-94, 696-700.)  Plaintiff filed a request for a hearing, and the ALJ conducted a hearing regarding plaintiff's claims on December 2, 2008.  (AT 688, 1030-62.)  Plaintiff, who was represented by counsel at the hearing, testified at the hearing.  A vocational expert ("VE") also testified at the hearing.

In a decision dated January 26, 2009, the ALJ denied plaintiff's application.  (AT 670-77.)  In reliance on the VE's testimony, the ALJ determined that plaintiff could still perform other work as a "table worker," "small products assembler," and "ticketer," which are jobs that exist in significant numbers in the regional or national economies.[5]  (AT 677.)  The

---

[5]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3

1 ALJ's decision became the final decision of the Commissioner when the Appeals Council denied
2 plaintiff's request for review.  (AT 660-62.)  Plaintiff subsequently filed this action.

        B.        Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since October 17, 2005, the alleged, amended date of onset.  (AT 672.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairment: "degenerative disc disease of the lumbar spine."  (AT 672.)  At step three, the ALJ determined that plaintiff does not have an impairment, or combination of impairments, that meets or medically equals any impairment listed in the applicable regulations.  (AT 672.)

The ALJ further determined that although plaintiff has the residual functional capacity ("RFC") to perform "light work,"[6] except that plaintiff would be "limited to occasional climbing of ramps, stairs, ladders, ropes and scaffolds; balancing; stooping; kneeling; crouching; and crawling."  (AT 672-73.)  In arriving at this RFC, the ALJ considered, but gave "no significant weight to," the medical opinions or assessments provided by plaintiff's treating physicians, Michael Hess, M.D., and Guy Corkill, M.D.  (See AT 673-75.)  The ALJ also found that plaintiff was not a credible witness and rejected plaintiff's testimony.  (AT 675.)  In

---

[6] The applicable regulation, 20 C.F.R. § 416.967(b), defines "light work" as follows:

> (b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

formulating the RFC, the ALJ appears to have primarily relied on a 2006 RFC assessment provided by state agency physician N.S. Dhaliwal, M.D., and in this regard the ALJ stated:

> After review of the full record and testimony, the undersigned finds that there is no evidence that supports the need to reduce the residual functional capacity further than had been done by the Disability Determination Services (DDS).  In [*sic*] light favorable to the claimant, after taking into consideration his subjective complaints, the residual functional capacity set forth above limits him to light exertion work with postural limitations.

(AT 676; see also AT 894-901.)

At step four, the ALJ found that, considering plaintiff's RFC and the VE's testimony, plaintiff is unable to perform past relevant work as a courtesy clerk or shuttle van driver.  (AT 676.)  The ALJ concluded at step five, however, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  (AT 676.)  Specifically, the ALJ found that, based on plaintiff's RFC and the VE's testimony, plaintiff could work as a "table worker," with 2,000 positions regionally and 147,000 positions nationally; a "small products assembler," with 6,000 positions regionally and 280,000 positions nationally; and "ticketer," with 1,000 positions regionally and 1,000,000 positions nationally.  (AT 677.)  Accordingly, the ALJ found that plaintiff was not disabled.

II.     STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

5

1 Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)). "The ALJ is responsible for determining
2 credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews,
3 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he
4 ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings
5 of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also
6 McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can
7 support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."
8 Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir.
9 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's
10 decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).
11 However, the court "must consider the entire record as a whole and may not affirm simply by
12 isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting
13 Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue,
14 504 F.3d 1028, 1035 (9th Cir. 2007).

III. ANALYSIS

As noted above, plaintiff alleges that the ALJ erred by: (1) rejecting or discounting the medical opinions and assessments of plaintiff's treating physicians, Drs. Hess and Corkill, without providing legally adequate reasons for doing so; (2) discounting plaintiff's testimony without providing clear and convincing reasons for doing so; and (3) asking the VE hypothetical questions that did not incorporate the limitations identified by Drs. Hess and Corkill and testified to by plaintiff. The success of plaintiff's third argument is contingent on the success of his first two arguments. Thus, if the undersigned concludes that the ALJ did not err in discounting the opinions of Drs. Hess and Corkill and plaintiff's testimony, plaintiff's arguments regarding the VE's testimony necessarily fail.

////

////

A. The ALJ's Rejection of the Medical Assessments of Drs. Hess and Corkill

Plaintiff contends that the ALJ impermissibly rejected the medical opinions or assessments of Dr. Michael Hess, plaintiff's treating primary care physician, and Dr. Guy Corkill, plaintiff's treating neurosurgeon, without providing legally permissible reasons for doing so. Although not all of the reasons for rejecting these physicians' opinions are supported by the record, the ALJ permissibly rejected Dr. Hess's and Dr. Corkill's opinions.[7]

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id. If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" Tommasetti, 533

---

[7] The Commissioner offers some reasons not relied on by the ALJ in order to substantiate or bolster the ALJ's rejection of plaintiffs' treating physicians' respective assessments. The undersigned has not considered the Commissioner's newly minted reasons because the court's review is constrained to the reasons asserted by the ALJ. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); accord Tommasetti, 533 F.3d at 1039 n.2 (declining to review reasons provided by the district court in support of the ALJ's credibility decision that were not provided by the ALJ during the administrative proceedings) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."))); Robbins, 466 F.3d at 884 n.2.

F.3d at 1041 (quoting <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989)).

Before turning to the rejection of specific medical assessments provided by Drs. Hess and Corkill, the undersigned summarily rejects the Commissioner's unsupported argument that the Ninth Circuit Court of Appeals's "judicially-created" standard requiring an ALJ to provide "clear and convincing" reasons in order to reject a treating physician's uncontroverted medical opinion "appear[s] to be improper." (Def.'s Opp'n at 8 ("To the extent the Ninth Circuit's judicially-created standard exceeds the requirements set forth by Congress and by the Commissioner at the behest of Congress, it would appear to be improper.").) The Commissioner offers no persuasive support for his request that this court depart from or somehow overrule decades of Ninth Circuit precedent. Accordingly, the undersigned will continue to follow the law of this Circuit.

### 1. Dr. Hess's Assessment

The ALJ rejected the functional limitations assessed by Dr. Hess in a letter dated May 15, 2008 (AT 1024), and in a form entitled "Physician's Functional Capacities Evaluation" dated May 8, 2008 (AT 1025-26). (<u>See</u> AT 674-75 (rejecting Dr. Hess's assessments).) The substance of Dr. Hess's May 15, 2008 letter states:

> Robert has chronic back pain that interferes with his ability to do any type of heavy manual labor, lifting or twisting of his back. He has told me that he is able to do very light duty manual work. Due to his pain he must be free to move about and change positions frequently. He can sit, stand and walk, but not for sustained periods of time. He is able to handle materials only of light weight, such as 10 lbs [*sic*] or less. He has had tendonitis [*sic*] of both shoulders and wrists, so it is not advisable for him to do any type of ongoing repetitive motions of his upper extremities. . . . He denies any mental impairment.

(AT 1024.)

Dr. Hess's May Physician's Functional Capacities Evaluation concludes that plaintiff lacks the "capacity to work a full 8 hour day" as a result of an underlying condition of "Degenerative disc disease L4-5-S1," and can only work two hours per day. (<u>See</u> AT 1025-26.) It states that plaintiff has sitting and standing limitations that require plaintiff to change positions

8

frequently, must be able to brace himself during sitting activities due to back pain, and needs to be able to lie down for 20 minutes every two to three hours. (AT 1025.) It further states that plaintiff can occasionally lift 11 to 50 pounds, can never lift 50 to 100 pounds, can never bend, and can occasionally reach and climb. (AT 1025.) Dr. Hess also curiously opines that plaintiff's "stamina for work activity" will not decrease as the day progresses. (AT 1026.) The form lists an onset date for plaintiff's limitations of "1976," and assesses that these limitations are permanent. (AT 1026.)

As the ALJ's lengthy recitation of plaintiff's medical history suggests, Dr. Hess's assessment is contradicted by the assessments of Dr. Dhaliwal and Dr. Julie Sowerby. (See AT 673, 677.) Additionally, Dr. Corkill's functional assessment, which is addressed in more detail below, contradicts several of Dr. Hess's conclusions about plaintiff's functional limitations. (See AT 1028.) Accordingly, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Hess's assessment.

First, the ALJ rejected Dr. Hess's assessment because "the functional limitations he was recommending were based on the claimant's self-reported deficits." (AT 674; see also AT 675.) "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041. Dr. Hess's May 15, 2008 letter largely relies on plaintiff's self-reports in that it conveys plaintiff's assessment that he "is able to do very light duty manual work"; that plaintiff must be "free to move about and change positions frequently" due to plaintiff's pain, which is necessarily a subjective assessment; and that plaintiff "can sit, stand and walk, but not for sustained periods of time," which also suggests a subjective complaint. (AT 1024.) The letter further states that plaintiff "denies any mental impairment." (AT 1024.) Thus, Dr. Hess's letter essentially reported plaintiff's self-assessed limitations. Because the undersigned concludes below that the ALJ permissibly questioned plaintiff's credibility, this reason supports the ALJ's rejection of Dr. Hess's medical assessment.

        Second, the ALJ discounted Dr. Hess's opinion on the basis of a letter signed by Dr. Corkill, which the ALJ characterizes as finding that plaintiff's "symptoms were benign and mild in nature as late as May 2008." (AT 674.) Plaintiff's correctly points out that Dr. Corkill's May 9, 2008 letter cited by the ALJ, which Dr. Corkill wrote after a follow-up appointment with plaintiff, does not state that plaintiff's *symptoms* were "benign and mild in nature"; instead, that letter states that plaintiff's MRIs of his thoracic and lumbar spine "reveal benign mild *changes* only." (AT 938.) In fact, Dr. Corkill's letter did not state that plaintiff's symptoms were benign or mild; it only commented on the changes in plaintiff's MRI. Thus, the ALJ misinterpreted Dr. Corkill's letter in rejecting Dr. Hess's medical assessment, and this reason does not provide a legitimate basis for rejecting Dr. Hess's assessment.

        Third, the ALJ reasoned that "the functional limitations assessed by Dr. Hess are uncorroborated by his own record," specifically noting that "[a]ll the diagnostic studies ordered by Dr. Hess returned mild or unremarkable regarding the spine." (AT 674-75.) As support for this conclusion, the ALJ cited radiological reports dated February 8, 2008, November 13, 2007, and July 31, 2006, which support the ALJ's conclusion. (See AT 675; see also 983, 989, 1014-17.) Contrary to plaintiff's argument, the ALJ was not providing his own medical assessment. Rather, the ALJ could review the mild and unremarkable radiological findings simply by reading the physicians' conclusions contained in their reports. The undersigned concludes that this reason is specific and legitimate, and supports the ALJ's rejection of Dr. Hess's functional assessment of plaintiff.

        Although one of the ALJ's reasons offered in support of his rejection of Dr. Hess's functional assessments is unsupported by the record, the remaining reasons are supported by the record and provide specific and legitimate reasons for discounting Dr. Hess's opinions. Accordingly, the ALJ did not err by according "no significant weight" to Dr. Hess's assessment.

////

////

### 2. Dr. Corkill's Assessment

The ALJ also rejected the functional limitations assessed by Dr. Corkill, plaintiff's treating neurosurgeon, in a form entitled "Physician's Functional Capacities Evaluation," which is dated May 29, 2008. (AT 674, 1028-29.) Dr. Corkill's evaluation form concludes that plaintiff lacks the "capacity to work a full 8 hour day" and can only work four hours per day. (AT 1028.) Contrary to Dr. Hess's assessment, Dr. Corkill does not identify degenerative disc disease as an underlying condition at all, but identifies "diabetic polyneuropathy" and "mono-neuritis multiplex" as the pathological bases for or causes of plaintiff's pain. (AT 1029.) Dr. Corkill further states that plaintiff can only sit and/or stand for four hours, noting plaintiff's "moderate disability." (AT 1028.) Contrary to Dr. Hess's assessment, Dr. Corkill opines that plaintiff does not need an opportunity to lie down during the day to relieve pain and does not need to brace himself during sitting activities due to back pain. (AT 1028.) Somewhat differently than Dr. Hess, Dr. Corkill opines that plaintiff can occasionally lift 11 to 20 pounds, can never lift 21 to 100 pounds, and can occasionally bend, reach, and climb. (AT 1028.) Also contrary to Dr. Hess, Dr. Corkill opines that plaintiff's "stamina for work activity" will decrease as the day progresses, and will do so because of "Diabetic neuropathy." (AT 1029.) The form lists an onset date for plaintiff's limitations of "At least 2001," and assesses that plaintiff's limitations identified in the form are permanent. (AT 1029.)

As with Dr. Hess's functional assessment, Dr. Corkill's assessment is contradicted by the assessments of Drs. Dhaliwal and Sowerby. It is also contradicted by Dr. Hess's report. Accordingly, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Corkill's functional assessment.

At the outset, the undersigned notes that plaintiff makes much of the fact that the ALJ focused on Dr. Corkill's listing of an underlying condition of "diabetic polyneuropathy," to the exclusion of the other listed underlying condition identified by Dr. Corkill, "mono-neuritis

11

multiplex." Although plaintiff is correct that the ALJ did not specifically comment on Dr. Corkill's listing of mono-neuritis multiplex, that omission is of no material consequence here because both polyneuropathy and mono-neuritis multiplex, the latter of which is synonymous with mononeuropathy multiplex, consist of non-traumatic generalized disorders of the peripheral nervous system.[8] Thus, both conditions are disorders involving peripheral nerves and, moreover, both conditions are linked to diabetes mellitus.[9] Accordingly, the ALJ's discussion of diabetic polyneuropathy subsumed the underlying condition identified as mono-neuritis multiplex.[10]

Turning to the ALJ's specific reasons for discounting Dr. Corkill's functional assessment, the ALJ discounted the Dr. Corkill's opinion on the grounds that although Dr. Corkill based his functional assessment on plaintiff's symptoms of diabetic neuropathy, plaintiff had no diagnosis of diabetes mellitus. The ALJ stated:

> Dr. Corkill reported that the claimant's functional limitations were related to his diagnosis of diabetic neuropathy; these limiting abilities were reported as in existence since at least 2001 (Exhibit B12F/3). However, as reported by the claimant at [*sic*] hearing, the claimant does not have a diagnosis of diabetes mellitus; he was told he could be borderline diabetic.

---

[8] "Polyneuropathy" is generally defined as "[a] disease process involving a number of peripheral nerves" or "[a] nontraumatic generalized disorder of peripheral nerves." Stedman's Medical Dictionary 1536 (Lippincott Williams & Wilkins, eds., 28th ed. 2006) ("Stedman's Medical Dictionary"). Mononeuropathy is a "[d]isorder involving a single nerve." Id. at 1224. Moreover, "mononeuropathy multiplex," which is synonymous with mononeuritis multiplex, is defined as "nontraumatic involvement of two or more portions of the peripheral nervous system (e.g., roots, plexus elements, nerve trunks) . . . ." Id.

[9] See Stedman's Medical Dictionary 1537 (defining diabetic polyneuropathy as "a distal, symmetric, generally sensorimotor [polyneuropathy] that is a frequent complication of diabetes mellitus"); PubMed Health, Definition of Mononeuritis Multiplex (Nat'l Ctr. for Biotechnology Information, U.S. Nat'l Library of Medicine (last reviewed Sept. 13, 2010) (listing diabetes mellitus as a common cause of the symptoms of mononeuritis multiplex), available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001786/ (last visited March 28, 2011).

[10] To the extent that the ALJ's omission of the specific disorder of mononeuritis multiplex in his discussion of Dr. Corkill's functional assessment was error, such omission was inconsequential to the ultimate non-disability determination and, therefore, harmless error. See, e.g., Robbins, 466 F.3d at 885 (stating that an ALJ's error is harmless if it is "'inconsequential to the ultimate nondisability determination'") (citation and quotation marks omitted). Plaintiff does not argue to this court that consideration of mononeuritis multiplex would have somehow altered the ultimate non-disability determination.

12

> The claimant is on no medication or insulin treatment for diabetes. Although Dr. Corkill reported that the claimant had diabetic symptoms dating back to 2001, as outlined above, laboratory tests performed as late as October 2004 returned within normal range (Exhibit B3F/80).

(AT 674.) Relevant here, the ALJ and plaintiff had the following exchange at the hearing:

> Q. . . . Let me ask you a question. A couple references to diabetes. Now, in some records, it says no diabetes, and in other records, some people say yes, and you're not on any medications or anything. So . . . let me ask you, is there a formal diagnosis actually from somebody about diabetes?
>
> A. They took a test, and they said I was, some people say borderline. Some people --
>
> Q. Borderline?
>
> A. -- they say there is no borderline. I control it by diet.
>
> Q. Okay.
>
> A. As long as I don't skip meals, my blood sugar stays pretty normal.
>
> Q. . . . You're not on an, you actually aren't on medications right now or --
>
> A. Correct. I'm not.
>
> Q. -- no insulin, no pills or anything?
>
> A. Correct.

(AT 1044.)

Plaintiff assails the ALJ's use of plaintiff's testimony at the hearing to undermine Dr. Corkill's assessment that plaintiff's limitations were caused by diabetes mellitus. Plaintiff contends that his testimony "indicates three different medical opinions: that he was diabetic, that he was borderline, and that there is no borderline." (Pl.'s Mot. For Summ. J. at 14.) He further argues that he never testified that he does not have a diagnosis of diabetes mellitus. (Id. at 15.)

As an initial matter, it is entirely unclear how plaintiff construes his testimony as providing any medical opinion. Plaintiff is not a physician, testified generally, and did not report any opinion of a specific physician.

13

Moreover, plaintiff makes too much of the ALJ's citation to plaintiff's testimony. The ALJ merely reasoned that plaintiff had no diagnosis of diabetes mellitus, "as reported by the claimant at [*sic*] hearing." (AT 674.) Thus, the underlying point to the ALJ's reasoning was that plaintiff did not have a diagnosis of diabetes mellitus during the relevant period. Plaintiff has pointed to no evidence to the contrary. The lack of a diagnosis, as well as the fact that plaintiff is on no medication or insulin treatment for diabetes undermines Dr. Corkill's functional assessment finding extreme limitations, which is premised on an underlying condition of diabetes mellitus. The undersigned finds no error pertaining to the ALJ's diagnosis-related reason for discounting Dr. Corkill's assessment.[11]

Additionally, the ALJ noted that "Dr. Hess, the primary care physician that oversaw the majority of the claimant's medical complaints and conditions, made no statement in his letter regarding functional deficits due to diabetes or any related condition." (AT 674.) This reason is supported by the record (see AT 1024-26), and plaintiff has not argued to the contrary. It seems evident that if plaintiff's symptoms related to diabetes mellitus were totally disabling, plaintiff's primary care physician would list that condition as an underlying condition contributing to his patient's functional limitations. Yet, Dr. Hess made no mention of diabetes mellitus (or mono-neuritis multiplex).

These reasons support the ALJ's rejection of Dr. Corkill's functional assessment. And for the reasons stated above, the ALJ permissibly discounted the assessments of Drs. Hess and Corkill.

////

////

---

[11] Plaintiff also contends that the ALJ erred by relying on blood tests that fell within a normal range as late as October 2004 because plaintiff's revised, alleged onset date was October 17, 2005. (Pl.'s Mot. for Summ. J. at 15; AT 879.) But, as discussed above, the ALJ's underlying reason for discounting Dr. Corkill's opinion was a lack of evidence of a diagnosis of diabetes mellitus during the relevant period. The 2004 lab tests are consistent with the ALJ's reasoning, and the ALJ's reasons are supported even absent the test results.

B. The ALJ's Adverse Credibility Finding

Plaintiff next challenges the ALJ's finding that inconsistencies in the record raised issues of credibility with respect to plaintiff's subjective testimony about his pain and functional limitations. (See AT 675.)

In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

It appears that the ALJ's credibility determination here hinges on the second step of the analysis described in Lingenfelter. The ALJ appears to have found that the record

contained objective medical evidence of an underlying impairment—degenerative disc disease—that could reasonably be expected to produce the pain or other symptoms alleged. (AT 22.) Because the ALJ did not identify any evidence of malingering, he was required to provide clear and convincing reasons for discounting plaintiff's testimony.

The ALJ offered several reasons for his adverse credibility finding. Although the undersigned finds that some of the reasons provided by the ALJ are minimally persuasive or unpersuasive, the ALJ nonetheless provided clear and convincing reasons for his credibility determination.

The ALJ reasoned that objective evidence in the record did not support plaintiff's self-reported limitations. (AT 675.) Although an ALJ may not rely solely on a lack of objective findings to discount a plaintiff's credibility, it is a permissible basis for an adverse credibility finding when used in combination with other factors. See Robbins, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence.")  Here, medical evidence in the record does not support plaintiff's claim of completely disabling pain and functional limitations. For example, as discussed above and noted by the ALJ, plaintiff's radiological exams conducted after the alleged date of onset revealed mild or unremarkable findings in relation to plaintiff's back and spine. (See AT 675, 983, 984, 989, 1014-17.) Moreover, Dr. Sowerby reported after examining plaintiff in January 2007, that, among other things, plaintiff had a "full range of motion without pain" with respect to his neck and cervical spine. (AT 936.) Additionally, she noted in regards to plaintiff's spine that although plaintiff had some tenderness and some limited range of motion in extension, flexion, and right-side bending and rotation, she found that plaintiff was "able to heel and toe walk without difficulty and without his cane." (Id.) The objective radiological reports and Dr. Sowerby's examination contradict plaintiff's claims of disabling pain and functional limitations.

The ALJ also noted that plaintiff had worked at a medium exertional level until

16

1996, even though plaintiff had reported to Dr. Sowerby that his back problems began in 1976. (AT 675.) Notably, Dr. Hess reported that plaintiff's all-disabling limitations began in 1976 and were permanent. (AT 1026.) The ALJ's reason in this regard is of only limited persuasive value because plaintiff did not report to Dr. Sowerby that he was totally disabled as of 1976. He only reported that several of his symptoms—"burning" in his lower back and hip and radicular numbness—started in 1976.

The ALJ also noted that plaintiff had been using methamphetamine and other drugs until 1997, when plaintiff stopped working. (AT 675.) It is unclear how the ALJ intended to discount plaintiff's credibility based on the fact of plaintiff's drug use or addiction. For example, the ALJ did not reason that plaintiff had presented conflicting information about his drug use. See, e.g., Thomas, 278 F.3d at 959 (concluding that inconsistent statements regarding drug and alcohol use supported an adverse credibility finding). Accordingly, the undersigned does not find that the ALJ's comment about plaintiff's drug use materially supports the adverse credibility finding.

Additionally, the ALJ discounted plaintiff's testimony because plaintiff showed no effort to re-enter the workforce, even at a lower exertional level, or seek vocational rehabilitation since he stopped working in 1997. (AT 675.) Given plaintiff's revised alleged date of onset of disability of October 17, 2005, the ALJ permissibly questioned plaintiff's credibility based on a propensity not to seek work or vocational rehabilitation during a period of approximately eight years. See Thomas, 278 F.3d at 959 (concluding that a claimant's minimal propensity to work during her lifetime supported an adverse credibility determination).

The ALJ also discounted plaintiff's credibility based on plaintiff's reported ability to drive approximately 95 miles for an appointment with "no apparent difficulties." (AT 675.) The undersigned rejects this reason offered by the ALJ because it is directly contradicted by the record. The Commissioner does not disagree. Plaintiff testified that he had problems during and after the road trip in question. Plaintiff testified that as a result of the trip, he "was down for two

17

days" and that his niece had to drive the return leg of the trip. (See AT 1054.) Accordingly, the ALJ's credibility finding is not supported by ALJ's comments based on plaintiff's ability to drive long distances.

The ALJ also seized upon the fact that plaintiff purportedly testified that he had obtained some student loans to pursue online education but had not attended any classes using those loans. (See AT 1036.) Additionally, when asked if he has attempted to have this loan discharged, plaintiff testified that he had applied to have this loan "postponed." (AT 1035-36.) The ALJ concluded that "[a]pparently, the student loan was used to augment living expenses and not for the purpose for which [plaintiff] had received it." (AT 675.) The parties appear to agree that the record does not support the ALJ's characterization of plaintiff's allegedly nefarious motive behind obtaining the student loan. Plaintiff did not testify that he had not done the class work for which the loan was obtained. Accordingly, this reason offered by the ALJ is not supported by the record.

Although some of the ALJ's reasons for discounting plaintiff's subjective testimony are not persuasive, the undersigned finds that the remaining reasons provide clear and convincing reasons supporting the adverse credibility finding. Additionally, to the extent that any of the ALJ's reasons were not supported by the record, the undersigned finds that the remaining reasons offered by the ALJ are supported by the record and that any error was harmless. See Carmickle v. Astrue, 533 F.3d 1155, 1162 (9th Cir. 2008). Accordingly, the undersigned concludes that the ALJ did not err by rejecting plaintiff's testimony.

C.   The ALJ's Questioning of the VE

Finally, plaintiff challenges the ALJ's questioning of the VE on the grounds that the ALJ erred by not adopting in the RFC the functional limitations found by Drs. Hess and Corkill, and as testified to by plaintiff, and that the erroneous RFC provided the basis for the ALJ's hypothetical questions of the VE. As the argument goes, the ALJ thus provided incomplete or unsupported hypothetical questions to the VE and ultimately relied on inaccurate

answers provided by the VE.  Because the undersigned concludes above that the ALJ properly discounted the functional assessments of Drs. Hess and Corkill and permissibly discounted plaintiff's subjective testimony, the ALJ did not err in questioning the VE or relying on the VE's answers.

IV.   CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 18) is denied;
2. The Commissioner's cross-motion for summary judgment (Dkt. No. 21) is granted; and
3. The Clerk of Court is directed to enter judgment in the Commissioner's favor.

DATED:  April 26, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE